LOWE vs. WING.

*October 14 — October 31, 1882.*

CHATTEL MORTGAGE: CONVERSION. *(1) As to whom mortgage invalid on failure to renew. (2) Conversion of chattel by second mortgagee.*

1. A chattel mortgage does not cease to be valid as against a second mortgagee who acquired his right as such within two years after the filing thereof, by reason of a failure to make the affidavit of renewal required by sec. 2315, R. S. *Newman v. Tymeson,* 12 Wis., 448.

2. A second mortgagee of a chattel who takes the same from the possession of the mortgagor and sells it and receives the full consideration of the sale, without regard to the rights of the senior mortgagee, is liable to the latter in an action for the conversion of the chattel.

APPEAL from the Circuit Court for *Trempealeau* County.

Action, commenced in justice's court, for the wrongful taking and conversion of a span of horses. The plaintiff had a judgment and the defendant appealed therefrom to the circuit court. The facts are stated in the opinion. At the close of the testimony a motion for a nonsuit was granted, and the plaintiff appealed from a judgment dismissing the complaint.

The cause was submitted for the appellant on the brief of *Button Brothers.*

For the respondent there was a brief by *Miller & Atwood,* and oral argument by *Wm. F. Vilas.* They argued, among other things, that the respondent had certain rights in the property, until they were foreclosed by the appellant taking possession of the property. He had the right of redemption and a right to the possession of the property as against anybody except the prior mortgagee, and until such time as the latter sought to establish his priority and transfer the possession to himself. Jones on Chat. Mortg., secs. 494, 497; *Treat v. Gilmore,* 49 Me., 34; *Smith v. Coolbaugh,* 21 Wis., 427; *Newman v. Tymeson,* 13 id., 172. By virtue of his equitable title, and for the purpose of collecting his debt, the respondent might deal with the property as he saw fit, if he in no manner injured the security and property of the appellant.

ORTON, J. It appears that the plaintiff took a mortgage of the property from one Parker on the 7th day of February, 1874, which was duly filed in the town clerk's office on the 15th day of the same month, and that on the 6th day of August, 1875, the defendant took a mortgage from Parker of the same property. In the fall of 1876, both mortgages being due, the defendant took the property from the possession of Parker by virtue of his mortgage, and caused it to be sold at public auction without reservation or condition,

and irrespective of the rights of the plaintiff, and received the full consideration of such sale. As to who became the purchaser the evidence is contradictory, but the defendant testified that it was sold to the brother of Parker, the mortgagor, and what afterwards became of it is not disclosed. On this evidence the circuit court granted a nonsuit on the sole ground that the defendant was guilty of no such wrong as would justify this action. To support the nonsuit in this court four several grounds are urged by the learned counsel who argued the cause: (1) That there was no sufficient identity of the property. (2) That the mortgage gave the possession of the property to the mortgagor absolutely for a time certain beyond the inception of defendant's right. (3) That at the time of the alleged conversion the plaintiff's mortgage had ceased to be valid, by failure to annex to the mortgage or copy thereof on file, within thirty days previous to the expiration of two years after the mortgage was given, the affidavit of renewal required by sec. 2315, R. S. (4) That in taking possession of and selling the property by virtue of his mortgage, the defendant committed no wrong which would warrant this suit.

1. There was certainly some evidence tending strongly to prove the identity of the property, which should have been submitted to the jury.

2. Although the mortgage reserved the possession of the property in the mortgagor until the same should be taken possession of by the mortgagee, there was the usual clause giving the mortgagee the right to take possession of the property whenever he deemed the debt insecure.

3. This court has followed the courts of New York in the construction of the above statute for the renewal of chattel mortgages, and has held that "the clear intent of this provision was that in case of failure to make the affidavit the mortgage should cease to be valid as against creditors who should *thereafter* seize it, or purchasers who should thereafter

purchase it." *Newman v. Tymeson*, 12 Wis., 448, in which is cited *Bates v. Wilbur*, 10 Wis., 415, and *Meech v. Patchin*, 14 N. Y., 71. See, also, *Case v. Jewett*, 13 Wis., 498; *Dillingham v. Bolt*, 37 N. Y., 198; *Edson v. Newell*, 14 Minn., 228; *Frank v. Playter*, 73 Mo., 672. The defendant obtained his right as mortgagee within the time when the plaintiff's mortgage was valid and therefore subject to it.

4. The defendant, by taking the property from the possession of the mortgagor and selling it, and receiving the full consideration of such sale, without regard to the rights of the plaintiff as senior mortgagee, committed a wrong for which the action is properly brought. This question has been so frequently and pointedly decided by this court that it is needless to look elsewhere for authority upon it.

In the case of *Cotton v. Watkins*, 6 Wis., 629, Chief Justice WHITON said, in respect to the assignee of the chattel mortgage: "He had the same right to take possession of the property and foreclose the mortgage. He had the right, therefore, to maintain trespass against any one who wrongfully took the goods from him."

In *Frisbee v. Langworthy*, 11 Wis., 376, Chief Justice DIXON said in respect to the rights of a mortgagee after condition broken, or if he was authorized to take possession whenever he deemed the debt insecure: "But in the case of property subject to a lien, where the lienholder is either in, or entitled to, the immediate possession of the property, it seems that a levy *upon the whole of it, in defiance of his rights*, is unauthorized by law and a trespass, on account of which he may maintain replevin." And again: "Replevin is a substitute for trespass and trover." In this opinion is cited the case of *Wheeler v. McFarland*, 10 Wend., 318. See, also, *Saxton v. Williams*, 15 Wis., 292, in which this doctrine is explained and enforced, and *Haas v. Prescott*, 38 Wis., 146.

In the last case of *Smith v. Konst*, 50 Wis., 360, Mr. Justice TAYLOR says in his opinion: "The respondent, as mort-

gagee, after condition broken, had the legal title to the property, and the right to the possession thereof, against everybody; and his right to recover against every person unlawfully *converting* the same in hostility to his rights as mortgagee, was just as perfect as if he had been the absolute owner thereof; the only difference being that, as against persons claiming under the mortgagor or his assignees, his right to damages would be limited to the amount due upon his mortgage," etc. This ought to set the question at rest. As to what the restricted rights of a subsequent mortgagee are, and to what extent and in what manner he may enforce them, although really outside of this case,— because the defendant did not so proceed,— see *Phillips v. Cook,* 24 Wend., 388; *Waddell v. Cook,* 2 Hill, 47; *Mellville v. Brown,* 15 Mass., 82; *Cotton v. Watkins, supra; Cotton v. Marsh,* 3 Wis., 221; *Bates v. Wilbur, supra; Flanders v. Thomas,* 12 Wis., 410; and *Welch v. Sackett,* id., 243. It is therefore obvious that the circuit court erred in taking this case from the jury and granting a nonsuit.

*By the Court.*— The judgment of the circuit court is reversed and the cause remanded for a new trial.